The next case is 4-15-0223. In re of the marriage of Anne Portz and David Luddy. For the appellant is Attorney Gina Wood and for the appellee is Attorney Todd Miller. Good afternoon. Ms. Wood, are you ready to proceed? Yes, Your Honor. You may. May it please the Court, Counsel, good afternoon. There is only one issue that has been brought before you in this case today and that is whether or not the trial court abused its discretion when it ordered Ms. Portz to pay her former spouse maintenance for a period of 10 years or until such time she chose to retire, whichever occurred first. By way of brief background, at the time of trial, both parties were relatively young, ages 51 and 52 respectively. Both were in good health, capable of working. In fact, it's uncontroverted that Mr. Luddington is capable of gainful employment and had many skills conducive to employability, many of which were beyond the norm. At the time of trial, Mr. Luddington was a retired police officer, having retired just the year prior at the age of 50. On the other hand, Ms. Portz continued to work as a special education teacher and did not have any plans to retire for a period of anywhere from 10 to 15 more years. The evidence is also clear that neither party gave up career or educational opportunities, training opportunities, or made any other sacrifices to the other party's career or training or education, nor did either party make any sacrifices to their employability and ability to earn income due to devoting time to domestic duties. Now, the trial court originally ordered that the parties divide their respective pension accounts, Mr. Luddington's police pension and Ms. Portz's TRS account, equally pursuant to qualified Illinois domestic relations orders. However, the court then also ordered Ms. Portz to pay back to Mr. Luddington 90% of her half of the marital portion of the police pension as maintenance. After hearing Ms. Portz's motion to reconsider and recognizing it had made some errors, the trial court adjusted that amount to 75% of Ms. Portz's portion of the police pension, again to be paid in the form of maintenance. Now, the concern that's being brought to you before today is that the trial court very clearly, when it made this determination, relied upon one factor under Section 504 of the statutory factors that assist us in determining maintenance, namely the disparity between the parties earning at the time of trial. There is not a single other factor listed within the court's findings, which the trial court only gave after the motion to reconsider was heard and ordered upon, that would support a maintenance finding in this case. All of the other factors either weighed against a maintenance award or were inapplicable to the case at hand. So the question is, is a single factor under Section 504 sufficient to allow an award of maintenance to be reasonable and not an abuse of discretion? Well, the court reviewed all the factors, didn't it? You can't just say there's just this one. Your Honor, I agree, the court did review the factors, but in support of a maintenance award, the only factor that could possibly point toward an appropriate maintenance award would be disparity of parties' earnings. And I would suggest that the wealth of case law that comes out of this district alone, in addition to the remainder of the state on this issue, there's not a single published opinion which would indicate that that factor alone supports a maintenance award. Those cases are very thoroughly discussed factually, usually, and often point to a number of factors under 504, although none of them need to be given equal weight or more or less weight than the other. There is always more than one factor in support of a maintenance award. And that's the guidance that we have worked with within our district and within this state, and I would suggest in this case, the trial court could not make findings that would support a maintenance award other than the disparity in the income. When you pair that with this district and the state's obvious mandate for parties seeking maintenance and receiving maintenance to rehabilitate themselves and become self-sufficient, if possible, from their former spouse, that further supports our argument that this was an abuse of discretion. Because the record is also very clear that what Mr. Ludington did not do with any meaningful intent is to try and avoid the necessity of his former spouse having to support him. We know that he was employed for a period of time after retiring at the age of 50 for an ammunition shop. He worked there for a period of months earning, over an annualized basis, about $26,000 a year, if you annualize that. He quit that job voluntarily. The evidence was also clear that after he quit that job and during the pendency of these proceedings up to trial, he had only made three efforts, well, two actually, efforts at obtaining subsequent employment. Does the record show why he quit the one job he had? He said he had a moral problem with the gun shop selling guns for people on, I'm assuming, some type of commission basis where he thought they were only giving 30% of the fair market value to the owner of the gun and he didn't think that was fair. He admitted on the record there was no other reason for his departure, nor did he believe the gun shop was committing any illegal acts. And I'd suggest that that dilemma, whether it was a moral one for him or not, certainly didn't justify his giving up $500 to $600 in gross income per week during the pendency of a separation and divorce from his spouse. You might want to keep that job while you're looking for the next one, perhaps. And it certainly doesn't support his unwillingness, which I believe it's clearly unwillingness, to seek other employment. He'd made an online application to State Farm for three different positions and he went in person to another sports shop and talked to some people at the front counter. Did you question him about his State Farm employment pursuit? The questions, I was not trial counsel, Your Honor, my partner was, but the record would indicate he was questioned about what he did and I believe it was actually his own counsel that did most of the query on that. And all that was told was online applications were made, there was no written document verifying that that even occurred, that he applied towards posting and did not receive an offer. So those of us familiar with Bloomington Normal and the surrounding area know there are a wealth of opportunities to at least request employment. We have two major universities, two community colleges, two large hospitals. We have AFNI. We have country companies. We have Growmark and a breadth of smaller and middle-sized businesses to whom a potential employee can seek employment. None of that happened in this case. He was 20 years an officer with the Normal Police? Yes, Your Honor. He did. And again, the testimony that he was able to retire at age 50, there was no indication that was done in bad faith and there's no criticism of that being made today. So it's your argument essentially that he's a slacker and your client has to essentially support his being such? My argument today is that when parties end their marriages and their partnerships, perhaps what we would like to do and prefer to do and have the luxury to do as a partnership is not always appropriate once that partnership ends. So what Mr. Ludington is expecting his wife to do is at the same age to continue to work until the age of 63, 65 or a more normal retirement age and support him, yes. So he can pursue his endeavors, which he testified to in detail, how he spent his day. What are they? Pardon me? Share with us that? Sure. He said he enjoys hunting. He is a competitive shooter with firearms. He gardens. He cleans his pool. He has a pool? He has a pool. So Ms. Ports, on the other hand, at the same age as a public servant of this state and a special education instructor, gets up every morning, goes to a classroom to instruct children, plans to do that to a more normal retirement age. While Mr. Ludington enjoys the luxury of retirement even after this marital estate has been divided and that just isn't reasonable or feasible. And this court placed no emphasis on his duty to rehabilitate himself, but it's notable that the trial court did specifically find that he was capable of employment and he could have made other efforts at finding employment. You made all these same arguments at the trial level, did you not? Or your colleague? The arguments regarding the maintenance arguments, you look at the closing arguments, really neither counsel made too much argument regarding maintenance. I would suggest, although I hate to infer since I wasn't there, that based upon the pleadings Mr. Ludington filed with the court, absence of any request for maintenance until final pretrial, which was literally days before trial, that neither party in this case thought of him as a potential maintenance candidate. And it was a last minute, let's see what can stick to the wall if we ask for it. Well, whether it was last minute or not, weren't the arguments made to the trial court that maintenance wouldn't be appropriate? I believe so, yes. You know the standard of review is so high, what happened at the trial level? Why did the trial judge buy this argument and how can we second guess it and conclude that there is an abuse of discretion? That's a great question and that's why we're here today. Well, help me. We don't understand why any reasonable trier of fact would find that a man of that age, with that employment history, that capability of work, and the refusal to rehabilitate himself would have been granted any type of maintenance. And the real difficulty in this case is, well, I think what happened is the trial court's concerned that if we share one of the most, well, one of two of the most valuable assets of this marriage, these people did not live a luxurious lifestyle. They had a house, some vehicles, some investments. Their major assets are the TRS and the police pension. The TRS is not going to be accessible until Ms. Bortz actually retires and elects for benefit. Counsel, as you know, the courts are supposed to be entirely sex neutral in these kinds of determinations, but nonetheless, I'm wondering, would the arguments be the same had the genders been switched? I absolutely believe the arguments would be the same, particularly when, in my practice area, when maintenance comes up quite frequently in front of the trial court, women traditionally are requesting maintenance and are queried at length at trial about their attempts to rehabilitate themselves and become more self-supporting. And when you pair that with the Illinois law that says that is your duty, even as a permanent maintenance recipient, absolutely I think the burden would be the same. The problem here is that we have someone capable of supporting himself in whole or in part, separate from his ex-partner, who is having to continue to go to work every day and yet subsidize his retirement lifestyle. And the dilemma she's in moving forward is, how do we make this stop unless I either continue to share most of my portion of this very valuable asset over the course of 10 to 15 years, which if we do simple math and we don't take into consideration the annual increases in that, she would receive, if she received half of the marital portion, roughly $2,000 per month. If she foregoes that for 10 to 15 years, we're looking at $120,000 to $200,000 and some thousand in lost investment. Time, value, wealth, she's not able to use or invest or save. She either has to continue to allow that to happen or alternatively quit her job, lose her stream of income, and then get out from underneath the maintenance obligation. Can the trial court address at all specifically the respondent's, Mr. Ludington's, failure to get employment? The trial court did not put much emphasis on that and that is what is very disconcerting about the ruling. After making specific findings, if you look in the order, those are in the order, that he is capable of employment, but it's hard to know how much he could earn because he's not working. It's left at that. And so now Ms. Ports, is she to file a petition to modify if Mr. Ludington doesn't follow through with the mandate of becoming rehabilitated? And if she does that, how does she overcome the burden of showing a substantial change in circumstance? If I'm not doing something now and I continue in that... You could be not doing it less? Not doing it less, I guess. I mean, so that's the dilemma for maintenance payors with the modifiability language. Now I recognize under the Hucker decision that that court said your refusal or your unwillingness to rehabilitate yourself may be a basis for modification. It doesn't say it shall be. And so those are two really tough choices for a person who is in the same physical condition, the same working condition, the same age as her spouse. Her spouse did not give up anything by virtue of this marriage for homemaking duties or for career education to his own demise. It's clear that the parties were separating and divorcing and yet Mr. Ludington is relying exclusively upon taking a sizable portion of his ex-wife's asset to sustain a luxury, I would say, of not maintaining employment at his age for a longer period of time. And so when you look at also the record where I circle back to, I don't think Mr. Ludington initially believed he was an appropriate maintenance candidate anyway. By virtue of the pleadings themselves and the last minute request, if you look at the record, I note that Mr. Ludington never presented evidence of his inability to meet his needs if he pursued and obtained employment. There was no evidence of that. That if I had employment, I still couldn't survive. No evidence. He had no evidence presented to the court that he'd made good efforts to secure employment. And that was his burden, not Ms. Portz's burden. No evidence of the length of time necessary to enable the acquisition of employment. Devoid of that. His future earning capacity, never talked about that. The standard of living during the marriage, never talked about that. Now you can infer from the record, you can see what they had in assets. It was not a high, high standard of living. It was modest, but there was no evidence on that. And there was no evidence as to the tax consequences of the proposal. And so, I believe it was a, what do we have to lose? Let's throw this thing at the wall, see if it'll stick. And the trial court let this request stick. And that was an abuse of the trial court's discretion. And that's why we're asking your Honorable Justices to consider overturning that decision and remanding this back to the trial court with specific instructions to vacate the maintenance portion of this order and allow both parties to enjoy these two significant assets of this marriage in equal portions. Thank you, Counsel. That's all I have. Thank you. Mr. Miller. Thank you. Please, the court. Counsel. I'd like to first address Anne's argument that maintenance recipients are obligated to seek financial independence. I believe that's how she phrased it in her brief. And David agrees completely. Maintenance recipients are obligated to seek financial independence. The testimony at trial was that he had made some job search efforts, that he understood that if he was awarded maintenance that he would be obligated to better himself financially, which would mean seeking employment. The testimony was never, and the inferences were never, that David intended to live a life of ease tending to his pool while his wife continued to work and to support him. He understands fully his obligation to find work. And in particular, if he's going to be- At the time of this hearing, how long had he been out of work? At the time of trial, I believe he'd been out of work for about a year. I'm sorry, retired from the town of Normal for about a year. I don't know, as we speak, how long it had been since he worked for the gun shop. Now, if this had been a criminal case and we were a jury, we'd be given instruction about how we may consider our common experiences in life. One of those is that living to Normal has the lowest unemployment rate, I think, in the state, and has for a long time. And that police officers with 20 years' experience, who have retired honorably, as far as we can tell, ought to be in demand by employers looking around for reliable, trustworthy people to do stuff. Fill in the blank, whatever that would be. Yet, apparently, your client would have us believe he's the outlier, that despite his best efforts, he just can't find a job. And I don't intend to be living off this lady, my former wife, forever, but that's just how it's been for the last year. Why should we believe that? I don't think that that's his position. That was certainly not his testimony. It certainly looks like that's his position. What part of my assessment is incorrect? David's position throughout this was, given that his only source of income during this divorce process was his retirement income, that it would be appropriate if he were to keep that, he would waive any interest he might have in his wife's retirement income, and that we could sever all financial ties between the parties in that fashion. They'd go their separate ways. His testimony was he would have plenty of income if he had the full benefit of his retirement. When it became clear that we were not going to be able to resolve the matter in that fashion, then, from David's perspective, this became a maintenance case. And counsel, to some extent, is correct. The decision to pursue maintenance was not something that was in the forefront of everybody's mind from the get-go. It was only after all efforts to resolve the matter in another fashion that maintenance was pursued. So it was not David's intent, as the proceedings went on. Not initially, but once you couldn't resolve it on letting him keep his full pension, then what? Why isn't it his intention now to live off this lady and not get a job? Well, as I said, his testimony was if he understood that he would have an obligation according to the case law. Counsel, maybe I'm not being clear. Tell me again why, for a year, your client hasn't been employed. His testimony was he's not been able to find work. Why is that the least bit believable? And how in the world did the trial judge buy it? Well, the trial judge had the ability to hear the testimony of both of the parties, to weigh their credibility, to assess their credibility. Explain to me the testimony and why he hasn't been able to find a job. In sum, the testimony was that he had made some efforts. And maybe the question is, did he make sufficient efforts? And I think that's where we get into the case. Did a 20-year retired honorably cop get a job in security for State Farm? He applied for positions at State Farm and did not get a job. What positions did he apply for and what happened to his efforts to obtain them? Does the record show? The record does not show. Whose burden is it to show that? That would be his. Pardon? That would be his. Okay. If the record doesn't show it, and given the skepticism I think that ought to apply for the reasons I mentioned earlier, why should we buy the idea that he's just not a slacker? Well, there was no evidence that was presented at trial that would support the position that he was a slacker. If he were employed doing anything, including the job he had at the gun show before he said these moral qualms about it to the gun dealer, he almost certainly would not be entitled to any maintenance. Wouldn't that be true? It would depend, I guess, on what his income was. Well, how much maintenance is he getting now?  That's how much dollars, cash money as they say in Fisher, Illinois, how much is he getting now? Well, $1,500 roughly. $1,500 a month? I believe so. Can you imagine any employment he would have where he wouldn't be earning $1,500 a month? Well, I'm sure not full-time employment. Yeah, maybe. But if he were earning $1,500 a month, do you suppose there would be any basis or an argument to Judge Reiner or anyone else that taking his maintenance and you should award it to him? Well, it would depend on the remaining circumstances. All the other circumstances are the same. Everything is the same except he's got a job and he's earning $1,500 a month. What argument do you have for maintenance? Certainly not a good one. So how is it that we should accept the cleaning the pool and I hunt and I go shoot business, but I'm, trust me, Judge, I'm serious, in the future I'm going to be looking for a job. How does that work? Well, respectfully, I believe that the case law addresses the recipient's obligation to make significant efforts to look for full-time employment and to better themselves financially and to make themselves financially sufficient. Well, he's the recipient. He's the recipient now. He's not received a penny in maintenance. Well, that's the order that's being appealed. That's the order that's being appealed. If he loses, he gets maintenance, right? Correct. And then the burden attaches that he becomes financially self-sufficient. So there's no burden until the maintenance order attaches? I don't believe the case law says that there is. Do you think that makes good sense? All I can say, Your Honor, is I don't believe that that's supported by the case law. And if I could address that in more detail. Counsel, in support of her argument, cites to 11 different cases, which she asserts support the view that he has a duty prior to the award of maintenance. Six of those cases, Portwright, Dunseth, Hucker, Lambden, Martin, and Peterson, all address issues where there was a modification of maintenance that was sought, a termination of maintenance sought, or an extension of maintenance that was sought. The other five cases, McNeely, there the wife made no efforts to seek employment prior to an initial award of maintenance. Permanent maintenance was found to be inappropriate by the appellate court, and the case was remanded with instructions. This is not a permanent maintenance situation. So if I understand your position, you stated a moment ago, if we affirm and Ann starts paying David maintenance, then the obligation will kick in for him to try to find a job? Correct. And if he finds a job earning $1,500 a month or more, would that then be a sufficient change of circumstances for Ann to return to the court and say, hey, maintenance is no longer appropriate? Well, the order contemplated a review upon a change in circumstances. I would think from a pleading point of view that that would be a change in circumstances that would certainly justify the filing of a pleading. Whether that would be sufficient for the trial court to make a modification would be for the trial court to determine. Until such time as maintenance is ordered, there's no obligation on the recipient who's seeking maintenance to actually get employment if he can. Again, according to the case law and the issue... That's according to your position now before us. I don't believe that the case law supports such an obligation. What about the statute itself? Ms. Wood points to factors three and four under section 504A as implicitly requiring that. The factor three is present and future earning capacity of each party. That can be considered by the court. That is not a mandate to have made so many efforts or efforts to such an extent. What is David's present earning capacity? I'm sorry? What is David's present earning capacity? That's a very good question. Zero? No, I don't think zero. Isn't that what the trial court concluded? Isn't that something that will be awful hard for us to accept? Not at all. What the trial court said, if I may read from the order... ...is factor 5, which is the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment. The court said, the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment and whether that party is able to support himself or herself through appropriate employment or is the custodian of a child, which isn't the issue here. The respondent is apparently able to support himself on his current pension income, meaning if he has his full pension income. His testimony was he'd be homeless if he only had half of it. And is able to secure further employment, though it's not clear what employment would be available to replace whatever portion of the respondent's pension income is allocated, if any, to the petitioner in the property distribution. Nor is it clear what further education or training would be necessary for the respondent to secure appropriate employment. What do you think? For the 20-year retired cop and relatively good health, what further education or training is needed to get a job? Well, I don't know. I don't know either, Counselor. As a matter of fact, I have trouble even speculating what it would be. I don't know what it would be. Did the court address, number three, the present earning capacity of each party? The court did. The court went, in its order on the motion to reconsider, the court went to great length to address all of the considerations. In fact, four pages of the order, four pages of a seven-page order, addressed just that. As to the third factor, the court said the present and future earning capacity of each party. The petitioner has an established and enduring capacity as a teacher. The respondent's earning capacity is first indicated by his pension. And I think the court addressed that. By virtue of the fact that it was earned by him, while it is not clear to the court with precision what the respondent's additional earning capacity is, it is uncontroverted that he's capable of gainful employment. What was the last part? It's uncontroverted that he's capable of gainful employment. What does the court say about his present earning capacity? He's got some? He's got the ability to find employment, yes. And at the time the court wrote that, he had been unemployed for a year? He'd been retired for a year. Retired for a year. And the employment at the gun shop was what, two months? I don't recall, frankly. I'd have to look at the testimony. But other than the gun shop, he hadn't been employed? He did have some part-time employment as a videographer as well. May I proceed? All right. Both counsel in their briefs have cited to in re-marriage of Samardizia, which is a Fourth District case, I believe. No, I'm sorry, it's not. It's Third District. The appellate court there states the recipient's spouse has a good faith obligation to become self-sufficient while using the maintenance award to help during the transition period. Both counsel also have cited to in re-marriage of Seisel, which holds one objective of the act is to encourage a formerly dependent spouse to become financially independent in the future, if possible. Next point I'd like to address is, was the issue of maintenance properly before the court? As is clear, I think, from our brief, we believe that it is. Fourth District case in marriage of Thornley, which cites Second District in re-marriage of Hocklutner, holds in a marriage dissolution proceeding where the statute authorizes an award of maintenance under just or equitable terms, which our section does, all that is required to sustain the award is that the recipient be entitled to it and the award be equitable. There's no mandate in Section 504, and there's no mandate in case law construing it, that there be a formal pleading seeking maintenance filed with the trial court. As we've noted in our brief, Anne, in her initial petition, pleads for such other and further relief as the court deems equitable and just. An award of maintenance has been upheld where just that pleading was made. That's in the Thornley matter, again a Fourth District case. The wife who was seeking maintenance did not specifically ask for maintenance in her petition, but she did plead the general, equitable, other, and just relief. And this is a situation where maintenance is clearly an equitable consideration that the trial court made, given that we're dividing up pensions, which are typically assets of the estate, but since David is retired, that asset is also his sole source of income at the time of the trial. And the court felt, and David agrees clearly, that there needed to be some equitable consideration there and some offset, given that half of his livelihood was going to be going to Anne, since it was an asset in addition to income. We further believe that the court properly considered all of the relevant statutory factors. As I've noted, the court went to great lengths. The majority of its order is detailing the addressing of those statutes, or those requirements. Anne would have us believe that an award of maintenance is merely a mathematical equation of some sort. Did the majority of the factors weigh in favor of maintenance, or did enough of the factors weigh in favor of maintenance? There's no such requirement in the statute. There's no such requirement in the case law. The statute itself, the language from the statute, authorizes the court to make awards in amounts and for periods of time as the court deems just. Just and equitable are synonymous. As I said, this is an equitable consideration here, and equitable considerations don't lend themselves to formulaic analysis that Anne would have this court do. The trial court here analyzed all of the statutory factors, applied the factors to the case, and made a ruling that was just based on the facts of this case. I'll refer the court again to In Re Marriage of Samarja. There, the appellate court has held that the trial court need not give equal weight to all of the factors. Anne, in her brief, has argued that there was only one factor that was applied. There was only one factor that was applied. I don't agree with that analysis. I think if you read the court's ruling, more than one factor favored the award of maintenance. Perhaps not a majority of the factors, but looked at as a whole, the court found that maintenance was appropriate. The court found the balance to be reasonable. As I've discussed, without some form of maintenance, at least while David seeks full-time employment, he's going to be having to live on one half of his pension, and his testimony was he cannot do that. He cannot sustain anything even remotely resembling the lifestyle that the parties had on only half of his maintenance, when, while married, he had full benefit of his maintenance and his wife's income pooled into the household. Anne argues that she was inappropriately denied the time value of her share of David's pension. In her brief, she cites no authority to support that position. The one case that she does cite, in Ray Marriage of Manker, has nothing to do with the facts of this case. In Manker, the trial court reserved ruling on the distribution of a pension until the parties were retired. That's not what happened here. Her argument, understandably, is specious. She's presenting things to this court in a light that only shines upon her. When you look at the totality, though, as the trial court must, it's got to do what is right in the totality of the circumstances, what is right for both of these parties. We believe the trial court did just that and made a just and equitable ruling. It's now up to this panel to determine whether it did so within its discretion, and that is the standard of review. Was there an abuse of discretion? Would no reasonable person, not these three justices, but would no reasonable person make the same ruling that Judge Reinert made in this case? All right, Mr. Miller, your time is up. Thank you. Thank you. Ms. Wood, rebuttal? Your Honors, I'd like to point out a couple factual matters that are available in the record. We know from the record that Mr. Ludington actually retired in August of 2011. He worked at the gun shop from October of 2011 through, his testimony was January or February of 2012, so roughly four months. The divorce was filed in 2013, and the trial took place, I believe, in June or July of 2014. So we're actually talking about years of not seeking and pursuing employability, but for the attempts that we've discussed earlier. And I would respectfully disagree very much with counsel's argument that that duty only is triggered upon the divorce itself and a receipt of maintenance. If that were the case, a trial court would have the impossible endeavor of considering factors three and four of the Section 504 factors. If we're absent of any evidence as to what attempts are being made to try to become partially or wholly supporting, how is a court ever to make findings on that? And that's what flies in the face in this case, is that there was no evidence presented by Mr. Ludington other than brief general statements as to a few minor attempts. And so the court erroneously determined, because I don't have that information in hand, and I know all he has as he sits here today is his pension, I'm going to deny Ms. Ports the bulk of her portion of that sizable marital asset so he can make ends meet. And then we're stuck back to what I stated before, how does Ms. Ports ever remedy that if Mr. Ludington continues with his unwillingness or refusal to become self-supporting? Now, counsel states that there were other factors within Section 504 which support this court's order, but doesn't tell you specifically what those are. So, as I indicated to Justice Steigman earlier, I recognize the court did, after the first motion to reconsider, realize findings were appropriate, but the findings themselves in reviewing the factors don't equate to factors that support the award. And I haven't heard from counsel, nor can I find of my own accord, other factors which would have supported this award. Mr. Miller is correct. Isn't he in his statement of the ultimate standard of review? He is very correct, and it is a difficult standard. I recognize that. Abuse of discretion is not an easy one. Also, I want to ask you, you heard Mr. Miller's argument about how the obligation to seek employment doesn't exist until maintenance is actually awarded. Was that argument made to the trial court as well? No, Your Honor, because there was no request with specificity made by Mr. Luddington at trial other than give me my entire pension. If you look at the record, it's a bit confusing. Initially, he made a maintenance request, in addition to wanting all of his pension and having half of Ms. Quartz's TRS awarded to him. That was his first proposal tendered at final pretrial. That was also the first time he requested maintenance. At trial, he shifted his position, indicating to the court that might be inequitable, and so instead, just give me my entire pension. Give her hers, and give me mine, which Ann Quartz's attorney argued would be inequitable as well because then she is denied years and years of this sizable asset that happens to be in pay status by virtue of the type of pension it is because she's elected to stay working. Of course, we didn't have these pensions valued, which isn't unusual in these cases. How would the trial court have known, had it accepted that argument without the respondent bringing to the court that evidence, if I keep mine and you keep yours, what will we ultimately receive in the end as a present value of those benefits? I would also point out that the duty to rehabilitate must start being considered during the proceedings themselves. Otherwise, the court would never be able to make a determination as to rehabilitative versus indefinite maintenance. This case was not awarded as a rehabilitative maintenance award. That might have been more palatable, but it is an indefinite award, contrary to what counsel states, because in 10 years, Ann would be 63, which is a more normal retirement age, or she can't get out from under the obligation until she actually retires. So that is an indefinite maintenance award. It doesn't put any burden on David to do things and then have us come back and see, okay, you've had three years since you retired, almost four, to do something with yourself to make money. But we're going to give you a year or two more to review. That didn't even happen. Briefly, I'd just like to point out a couple other things that the court stated, specifically, that I think are important. Ms. Wood? Okay, then I won't do that. Thank you so much. Thank you, counsel, both. The case will be taken under advisement, and a written decision shall issue.